## Case No. 13,627.

### The SUPERIOR.

[5 Sawy. 346.][1]

District Court, D. California. Jan. 3, 1879.

SHERIFFS — ALLOWING ATTACHED VESSEL TO ESCAPE — CLAIM FOR SUPPLIES — SHIPPING.

A sheriff who has permitted an attached vessel to get into the possession of a third party, who contracted debts for supplies and necessaries furnished said vessel, acquires no lien by having paid said claim for supplies, as against a subsequent purchaser at sheriff's sale, without notice, or a subsequent bona fide purchaser for value from the legal owner of record.

In admiralty.

M. C. Hassett and Botts & Sullivan, for libellants.

Milton Andros, for claimant.

HOFFMAN, District Judge. The facts of this case are not seriously disputed. In the early part of 1876, one Johnson succeeded in getting possession of, and making away with, the schooner Superior, then in the custody of the libellant as sheriff of the city and county of San Francisco, under an attachment levied at the suit of the California Cracker Company against one Clay, the alleged beneficial owner. Johnson, after putting a crew on board, proceeded with the schooner, and in command of her, to Port Townsend, Wash-

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

ington territory, where he contracted debts to a considerable amount for supplies and necessaries. The sheriff, having ascertained her whereabouts, followed her to Port Townsend, and was about to reclaim her, when Rothschild, who had furnished the supplies, filed a libel against her in the admiralty court of the territory. The sheriff thereupon paid Rothschild's bill, took an assignment of his claim, and returned with the vessel to this city.

She remained in his possession until on or about the eleventh of December, 1876, when judgment having been obtained by the cracker company in the suit against Clay, and execution issued, she was sold by the sheriff at public auction, the company becoming the purchaser. On the fifteenth of January, 1877, Peter Larsen filed a libel in this court against the schooner, which was then in possession of the cracker company, under a bill of sale to them by the sheriff. The vessel remained in the custody of the marshal until on or about January 29, 1877, when Orrington Betts, in whose name she stood in the records of the custom house, sold her to Thomas D. Young, the present claimant, for the sum of eight thousand four hundred dollars, of which one thousand two hundred dollars was paid in cash, and applied in satisfaction of Larsen's claim, and the balance by a negotiable promissory note, which has since been paid. The bill of sale executed by Betts to Young was at once recorded, and the cracker company having failed to record their bill of sale from the sheriff, the property in the vessel was subsequently adjudged to Young, as an innocent, bona fide purchaser for value from the legal owner of record under a bill of sale having priority of record. On the thirtieth day of January, the present libel was filed by Nunan, as the assignee of Rothschild.

The claim of the libellant, if maintained, involves the affirmation of the following propositions: 1. That Rothschild had a valid lien on the vessel; 2. That the sheriff had the capacity to, and in fact did, succeed to the rights of Rothschild, by virtue of the latter's assignment to him; 3. That his official sale of the vessel, without notice of the existence of the lien, did not amount to a waiver of it in favor of a subsequent purchaser for value, and without notice; 4. That his lien has not been lost by his laches in prosecuting.

1. In determining the first point, it is not necessary to consider the general question whether a mere trespasser who, by force or fraud, has succeeded in making away with a vessel, and who has no color of possessory or proprietary right, can make contracts with innocent third parties which will bind her in rem as against her real owners.

The facts in this case do not present such a question. Prima facie, the person in peaceable and undisputed possession of the ship as master is presumed to have been duly appointed. If the owner seeks to avoid con-

tracts made or liens created by him under the circumstances above suggested, the burden of proof is on him to establish the facts. No attempt to do so has been made in the case at bar.

On the contrary, it appears that at the time of the escape, Johnson appeared on the custom-house records as her lawful master. Whether he had been discharged during the time she remained in the sheriff's custody does not appear. It is certain, however, that no one had been substituted for him of record at the custom-house. Nor is the conjecture or suspicion that Johnson escaped with the vessel with the connivance, or at the instigation, of the owners, repelled by any evidence whatever.

If, then, this were a suit between the material-man and the owners of the vessel at the time of the escape, I should feel little hesitation in holding that the latter had offered no evidence on which the claim of the former could be disallowed. I shall, therefore, in the further consideration of this case, assume that Rothschild acquired a valid lien on the vessel, which he could have enforced against the owner. Whether it would have been equally enforceable against the sheriff is more doubtful. The latter might, with some plausibility, have urged that the lien of the attaching creditor was prior and paramount to any liens growing out of the contracts made by a person whose possession had been obtained by a flagrant violation of law.

That he, the sheriff, was entitled to the exclusive possession of the ship, and that, in legal contemplation, she was still in custodia legis; that he had a right to invoke the powers of a court of admiralty to reinstate him in the possession of which he had been illegally divested; and that it must continue until the lien of the attaching creditor should be either dissolved by an adverse judgment in the pending suit, or by a satisfaction out of the proceeds of the vessel when sold; and that in the last case the material-man could only look for the payment of his demand to the surplus that might remain on such sale. after satisfying the judgment of the attaching creditor.

It may be that a possessory suit by the sheriff could have been maintained on these grounds, even against the claims of the material-man to a lien. It might be objected, however, that such a suit would be an indirect mode of visiting the consequences of the sheriff's own negligence upon an innocent party, who, but for that negligence, would have had no dealings with the vessel; that the attaching creditor was amply protected by the sheriff's liability on his official bond; and that the sheriff could not escape or diminish that liability by casting the loss upon an innocent party who had dealt on the credit of the vessel, and without knowledge or means of knowledge of the facts, with a person whose possession and apparent authority were exclusively the result of the sheriff's negligence in the performance of his official

duty. If there be any force in these last suggestions it follows that the sheriff, in paying off the claims of the supply-man, did no more than his duty, and in fact, was only meeting a liability which he had already incurred. In that view the claim of the supply-man would be deemed to be extinguished by the payment by the sheriff, and the latter would have no demand on any one for reimbursement, and consequently could have no lien to enforce it. I am not sure, however, that this would be the legal result.

On the contrary, I incline to think that if the lien of the attaching creditor had been dissolved, either by an adverse judgment in the suit, by bonding of the vessel, or by a settlement of his claim, and the vessel had been restored to the owner, the sheriff might, on producing the assignment to him of the supply-man's demand, and on proof that the escape was by the instigation or with the connivance of the owners, and that the master who had contracted the debt was their agent, be subrogated to all the rights in personam and in rem of the supply-man.

But no such proofs have been presented in this case, and besides, the suit is not against the vessel in the hands of the owner, who may have instigated Johnson to commit the trespass, but against a purchaser for value without notice. It will not, it is presumed, be contended that as against the attaching creditor the sheriff had any claim or lien on the vessel. Such a contention would involve the supposition that, by a payment rendered necessary by his own negligence, he could acquire a right in the vessel superior to that of the party to whom he was directly responsible for his negligence. Whereas, in fact, if the lien of Rothschild had been adjudged to be prior and superior to that of the attaching creditor, and the latter had been obliged to satisfy it, or the vessel had sold for a less price in consequence, the sum so paid by the creditor, or the difference in price obtained at the sale, would have been the exact measure of the sheriff's liability for the escape.

It is obvious that the assignment by Rothschild to the sheriff conveyed no rights as against the attaching creditor, and carried with it no lien enforceable against the latter, or against the purchaser at the execution sale. And this not merely on the ground that the sale and delivery of the vessel to the purchaser, without disclosing his claim, created an estoppel, or constituted a waiver by the sheriff of his rights; but because he had no rights to waive, and the purchaser, at the sale, either with or without notice, took the property divested of all lien on the part of the sheriff.

It appears to me that the present claimant. who is the bona fide purchaser from the legal owner of record, must occupy the same position; and that the only right acquired by the sheriff was that of enforcing his lien upon the vessel while in the hands of the own-

er, and on proof of complicity on his part in the escape, or that the master who contracted the debt was his duly appointed agent.

But if this view be erroneous, it is at least clear that a lien acquired under such exceptional circumstances should be promptly asserted and diligently enforced. But the sheriff not only failed to assert his claim during the whole time the vessel remained in his custody after her return, but he sold her, and delivered possession to the purchaser, without the slightest intimation of any demand of his own against her in rem.

The sale was made on the twelfth of December, 1876. The present libel was not filed until January 30, 1877—after, as has been before stated, the present claimant had become the owner of the vessel for value, and without notice. The sheriff has thus been doubly in fault: 1. In permitting the vessel to be taken from his custody; 2. In not asserting his claim until the rights of an innocent party had attached. It is clear that, as between the two, the rights of the latter must prevail. The libel must be dismissed.

---

SUPERIOR, The. See Case No. 14,344.

SUPERIOR, The (DUDLEY v.). See Case No. 4,115.

SUPERIOR, The (TRAINER v.). See Case No. 14,136.

SUPERIOR, The (VANDERSLICE v.). See Case No. 16,843.

---

### SUPERVISORS.

[Note. Additional cases cited under this title will be found arranged in alphabetical order under the names of the municipalities.]